IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BARBARA M. JEFFERS and </br> JOAN M. CRAIG, </br> </br>   Plaintiffs, </br> </br> v. </br> </br> RUSSELL COUNTY BOARD OF </br> EDUCATION and CHARLES NACRELLI, </br> </br>   Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) CIVIL ACTION NO. 3:06 CV 685 CSC </br> ) </br> ) </br> ) </br> ) </br> ) |

## NARRATIVE SUMMARY OF UNDISPUTED FACTS AND
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, Russell County Board of Education, and submits the following Narrative Summary of Undisputed Facts and Brief in Support of its Motion for Summary Judgment respectfully requesting that the Court enter judgment in this Defendant's favor as to all claims stated by Plaintiffs.

## INTRODUCTION

The Plaintiffs, Barbara M. Jeffers (hereinafter referred to as Jeffers) and Joan Craig (hereinafter referred to as Craig) seek to hold the Russell County Board of Education (hereinafter referred to as Board) liable for sexual harassment. Jeffers and Craig have alleged that Charles Nacrelli (hereinafter referred to as Nacrelli), the former principal of Ladonia Elementary School (hereinafter referred to as Ladonia) sexually harassed each of them in their employment. These claims against the Board are based on the theory of vicarious liability of an employer for the acts of its employee. As discussed below Jeffers and Craig are unable to show that there is a genuine issue of a material fact that would preclude summary judgment for the Board.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

The Russell County Board of Education is a county board of education and is a local agency of the State. The Board owns and operates public schools in Russell County, Alabama.

The Plaintiff Barbara Jeffers is a certified, tenured employee (counselor) of the Board in the position of school counselor at Ladonia.

The Plaintiff Joan Craig is a classified, non-probationary employee (support person) of the Board in the position of bus driver assigned to Ladonia.

The Defendant Charles Nacrelli is a former employee of the Board who previously served as Principal of Ladonia from the fall of 1999 until he was placed on leave and relieved of his duties on September 23, 2005. Nacrelli was terminated by the Board; appealed his termination under the Alabama tenure laws; and subsequently resigned. (Lee Affidavit).

Jeffers attended a party at the home of Nacrelli in July of 2005.

Jeffers first reported her allegations against Nacrelli to Dr. Rebecca S. Lee (hereinafter referred to as Lee), the former superintendent of the Board, on September 20, 2005. (Lee Affidavit).

Craig first reported her allegations against Nacrelli to Lee on October 25, 2005. (Lee Affidavit).

Lee served as the Superintendent of the Russell County Schools from late April 2004 until July 17, 2006. Her contract dates were July 1, 2004 to October 20, 2006. (Lee Affidavit).

The Board had previously adopted Board Policy GAJDBH which was in full force and effect during all times relevant herein. (Lee Affidavit; Lee Depo. pp. 14:22-23; 15:1-23 16:1-5.)

The Board published "Student Academic Plan & State of Responsibilities, A Handbook for School Personnel, Parents & Students" for the School Year 2004-2005 which contained as Appendix II, Russell County Board of Education, Statement of Sexual Harassment Policy. (Lee Affidavit).

The Board published "Student Academic Plan & State of Responsibilities, A Handbook for School Personnel, Parents & Students" for the School Year 2005-2006 which contained as Appendix II, Russell County Board of Education, Statement of Sexual Harassment Policy. (Lee Affidavit).

The "Student Academic Plan & State of Responsibilities, A Handbook for School Personnel, Parents & Students" is distributed to all the teachers and to all the support people. (Baker Depo. pp. 19:22-23 – 20:1-6).

John Rudd (hereinafter referred to as Rudd), Transportation Supervisor for the Board, hold an in-service training at the beginning of each year for transportation employees and deals with harassment of all types, including sexual harassment, and the reporting procedures. He issues a new Transportation Handbook to each driver which contains a section that deals with harassment. (Rudd Affidavit).

Lee instructed Lillian Baker (hereinafter referred to as Baker) on September 20, 2005 to investigate the allegations brought by Jeffers against Nacrelli. Baker began her investigation the next day, September 21, 2005. (Lee Affidavit).

Lee placed Nacrelli on administrative leave in her letter to him of September 23, 2005, and instructed Nacrelli to not have conduct with the staff at Ladonia. (Lee Affidavit).

Nacrelli left Ladonia on September 23, 2005 and did not return except for the express purpose of meeting the counsel for the Board to retrieve his personal items from his office. (Lee Affidavit)

Jeffers filed her claim of sexual harassment against the Board with the Equal Employment Opportunity Commission (hereinafter referred to as EEOC) on December 23, 2005. This Charge was dismissed on December 29, 2005. Jeffers filed her Amended Charge of Discrimination on January 19, 2006. The Charge Number assigned to the Amended Charge of Discrimination was 130-2006-01374.

Craig filed her claim of sexual harassment against the Board with the Equal Employment Opportunity Commission (hereinafter referred to as EEOC) on January 19, 2006. The Charge Number assigned was 420-2006-00390.

Plaintiffs filed suit in this Court on August 3, 2006.

## ARGUMENTS

## I

## VICARIOUS LIABILITY OF EMPLOYER

In *Faragher v. City of Boca Raton,* 524 U.S. 778 118 S.Ct. 2278 (1998) and *Burlington Industries, Inc. v. Ellerth* 524 U.S. 742, 118 S.Ct. 2257 (1998) the Supreme Court answered the question of when may an employer be held liable under Title VII for the acts of a supervisory employee whose sexual harassment of subordinates has created a hostile work environment amounting to employment discrimination.

Under *Faragher* and *Ellerth* the standard under which employer liability for supervisory harassment is to be decided is:

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken a defending employer may raise an affirmative defense to liability or damages subject to proof by a preponderance of evidence. . . . The defense comprises two necessary elements: a) that the employer exercised reasonable care to prevent and correct promptly a sexual harassing behavior, and b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . .  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher, 524 U.S. at 807-08.*

An employer is strictly liable for harassment by a supervisor that culminates in a tangible employment action. When there is no tangible employment action, the employee must establish a hostile work environment. The employer may defeat liability for a hostile work environment by raising the affirmative defenses that the employer exercised reasonable care to prevent and correct promptly any sexual harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Johnson v. Booker T. Washington Broadcasting Service 234 F. 3d 501(11th Cir.2000); Walton v. Johnson & Johnson Services, Inc., 347 F. 3d 1272 (11th Cir. 2003).*

A.

**TANGIBLE EMPLOYMENT ACTION**

To establish a prima facia case of vicarious liability against the Board for a tangible job action by Nacrelli, Jeffers and Craig must prove by a preponderance of evidence that they were subjected to an unwelcome sexual advance from a supervisor and that their negative responses to these advances was a motivating factor that resulted in a tangible job detriment being taken against them. *Meritor Savings Bank, FSB v. Vinson* 477 U.S., 68 (1986).

The only issue is whether Jeffers and Craig can show that their response to an unlawful request was in fact used thereafter as a basis for a decision affecting their employment. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3rd Cir. 2000).

In *Ellerth* the Supreme Court described a tangible employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly differently responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 526 U.S. at 761.

(1)

**Claim of Jeffers**

Jeffers alleges that she suffered an "illegal, retaliatory assignment" after she reported the sexual advances of Nacrelli. She states that she was "given a class load so unbearable by principal Nacrelli that the assignment violated state law" and that she "had to work additional hours for which she was not paid to keep pace with the demands from the new assignment." (Doc #1, Count Two).

Jeffers deposition testimony does not substantiate her claim of a tangible job action. Jeffers testified that there were 3 different work schedules that year. (Jeffers Depo. p. 194:3-4). When Nacrelli gave her the first schedule she went to him and showed him that it was not a satisfactory schedule. (Jeffers Depo.pp.192:18; 193: l and 12-20). Nacrelli then made out another schedule which she did not consider satisfactory. (Jeffers Depo. pp.192:20-22; 193:21-23). **Jeffers never worked under the either of the schedules drafted by Nacrelli.** (Emphasis added) (Jeffers Depo. pp.194:8-10). Ultimately Nacrelli told Jeffers to make up her own schedule and that is the one she worked under. (Jeffers Depo. pp. 192:22-23 – 93:1-3; 194:11-16).

Superintendent Lee testified that the changes in the schedules were done in conjunction with a change affecting counselors in all the elementary schools. (Lee Depo. pp. 41:7-23 – 42:1-3). These discussions and changes in the schedules for counselors were held in the spring of the school year 2004-2005. (Lee Affidavit).Therefore the schedules changes were the result of directive from Lee.

In addition to the fact that Jeffers never worked under the assignment which she described as an illegal retaliation, and the fact that the schedule changes for elementary counselors were initiated by Lee and discussed with the elementary principals in the spring of 2005, Jeffers has failed to present any other evidence of an adverse tangible job action. There has been no change in her tenure status. (Jeffers Depo. p. 195:3-14).She continues to receive the same benefits as before. (Jeffers Depo. pp. 195:15-23 – 196:1). There has been no loss in salary. (Jeffers Depo. p. 197:6-12). And she has not had any loss of income. (Jeffers Depo. p. 319:17-18).

Jeffers cannot present any evidence that there has been a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth, 526 U.S. at 761*. Therefore Jeffers claim of a tangible job action fails and Defendant is entitled to summary judgment as to Jeffers Count Two.

### (2)
### Claim of Craig

Craig alleges that she "often drove routes on her off hours, transporting students on field, band, sports and extra-curricular trips." She alleges that because Nacrelli's sexual harassment became so unbearable she "ceased accepting the additional work." She further alleges that Nacrelli's conduct resulted in constructive discharge from the work opportunity. (Doc #1, Count Four).

For there to be an actionable adverse tangible employment action claim to hold an employer vicariously liable there must be proof that that the person charged with the harassing conduct is a supervisor with immediate (or successively higher) authority over the employee. *Faragher 524 U.S. at 807; Ellerth, 524 U.S. at 765*. A claim of tangible employment action

cannot be maintained as an action against a co-worker. *Johnson v. Booker T. Washington Broadcasting Service 234 F. 3d 501, 508(11th Cir.2000).*

Nacrelli was not Craig's Supervisor. He had no authority to have any impact on her employment or the terms of her employment. He did not have any input into the evaluations of Craig. (Nacrelli Depo. p. 92:3-16). He had nothing to do with the school busses including how they lined up. (Nacrelli Depo. pp. 89:17-23 – 90:1-5). Her immediate supervisor was and is John Rudd who is Transportation Supervisor. Rudd is the supervisor who has the authority to affect Craig's employment including discipline and her continued employment. He alone would make any recommendation to the Assistant Superintendent for Personnel to terminate Craig's employment. (Rudd Affidavit)

Rudd hired Craig and has been Craig's supervisor the entire time that she has been a bus driver. (Craig Depo. p. 62:11-17; Rudd Affidavit). Nacrelli's only involvement related to student discipline, and he shared that responsibility with the other administrators at Ladonia. (Craig Depo. pp. 62:18-20; 63:21-23; 64:1-4 -17-22).

Rudd set up the bus routes for Craig and the other bus drivers each year. Craig and the other drivers had some input into those routes. Each year when the drivers picked up their busses they would go over the routes that had been set up for each bus. Craig would go to the bus shop to have input into the routes. On the years that Craig did not have input into the routes, Rudd would give her a piece of paper with the routes. (Craig Depo. pp. 59:21-23; 60:1-23; 61:1-20). Craig cannot identify any meetings with she and Rudd discussed bus routes when Nacrelli was present. (Craig Depo. pp. 65-17-23; 66:1-9).

Craig alleges that she ceased accepting extra work by no longer taking extra trips transporting students. Craig is the one who set up those extra trips by obtaining volunteers for them. From the 1992-1993 school year Craig was the contact person that the bus shop called to ask which bus driver would take a field trip. (Craig Depo. pp. 71:4-23; 72:1-20). Rudd allowed her to seek out the volunteers. (Rudd Affidavit). She voluntarily stopped taking extra field trip assignments after the trip to the Rudd Tree Farm in either 2002 or 2003. (Craig Depo. pp. 69:4-13). After that trip Craig went to the bus shop and told Tina that she wasn't taking any more field trips. (Craig Depo. p. 70:5-10). Craig voluntarily stopped taking the field trips for extra income. Her supervisor Rudd did not play any part in Craig's decision to stop taking the field trips.

7

Craig did not suffer an adverse tangible action. She voluntarily stopped taking the extra-curricular bus trips. She did not consult or advise anyone about her decision. This action was taken without any involvement of her supervisor Rudd. Nacrelli was not her supervisor. The Board is entitled to summary judgment on Craig's claim of adverse employment action.

**(a)**

**Craig's Constructive Discharge Claim**

Because there was no adverse job action is no constructive discharge

To prove constructive discharge, Craig must prove that her working conditions were so intolerable that a reasonable person in her position would have been compelled to resign. *Steele v. Offshore Shipbuilding, Inc. 867 F. 2d 1311 (11th Cir. 1989).* The standard for judging a constructive discharge claim is based on an objective standard. Craig's subjective feelings are not the controlling issue. *Hipp v. Liberty National Life Insurance Co., 252 F. 3d 1208 (11th Cir. 2001).* "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in [his] position would have been compelled to resign." *Id. at 1231.* "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Landgraf v. USI Film Prods., 968 F. 2d 427 430 (5th Cir. 1992).*

Craig has testified that she voluntarily removed herself from the extra curricular trips in 2002-2003. (Craig Depo. pp. 69:4-13; 70:5-10). A constructive discharge will not be found unless Craig has given the Board sufficient time to remedy the situation. *Kilgore v. Thompson & Brock Management, Inc., 93 F. 3d 752 (11th Cir. 1996).* Notice to Lee was not given until October 25, 2005, and to Rudd on February 9, 2006. (Lee and Rudd Affidavits).

**B.**

**HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT**

To establish a claim of sexual harassment where no tangible employment action has been taken the Plaintiff must establish a hostile work environment by proof of the following elements:

"(1)   that. . . she belongs to a protected group;  (2)  that the employee has been subject to unwelcome sexual harassment, such as sexual advances, request for sexual favor, and other conduct of a sexual nature; (3)  that the harassment must have been based on the sex of the

8

employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc., 195 F. 3d 1238, 1245 (11th Cir. 1999); Gupta v. Florida Board of Regents, 212 F. 3d 571, 582. Meritor Savings Bank, FSB v. Vinson 477 U.S. 57 (1986)*; *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993).

Obviously, there is no dispute that the Jeffers and Craig belong to a protected group (women). Defendant does not dispute that the allegations made by Craig against Nacrelli are gender based. However, the Defendant disputes that the remaining elements necessary to prove a hostile work environment have been established.

Jeffers and Craig are unable to prove that their alleged harassment created a hostile work environment that was so severe or pervasive as to alter the terms of their employment. "For sexual harassment to be actionable, it must be "sufficiently severe or perverse to alter the conditions of the victim's employment and create an abusive work environment". *Mendoza, 195 F. 3d at 1245; Henson v. City of Dundee*, 682 F. 2d 897 (11th Cir. 1982)

Whether conduct reaches the level of being so severe and pervasive as to alter the terms of the employment depends upon factors including, among others, 1) the frequency of the discriminatory conduct; whether it is physically threatening or humiliating, or mere offensive utterance. 2) the severity of the discriminatory conduct  3)  whether the discriminatory conduct is physically threatening or humiliating or a mere offensive utterance and 4) whether the discriminatory conduct interferes with an employees work performance. *Harris, 510 U.S. at 23*.

"For sexual harassment to rise to the level where it alters the terms and conditions of employment, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abuse, and one that the victim in fact did perceive to be so." *Faragher, 524 U.S. at 787*. Based on their having filed their EEOC complaints and this lawsuit, Jeffers and Craig found the alleged harassment to be subjectively offensive. "In addressing the objective hostility of the conduct, we must look at four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza, 195 F. 3d at 1246.*

The Eleventh Circuit Court of Appeals in Mendoza found that the allegations were "well short" of the level required to be severs and perverse sufficient to alter the terms or conditions of

the Plaintiff's employment. In reaching this conclusion the Court listed approximately 12 cases from Circuits throughout the country that have rejected sexual harassment claims. *Mendoza, 195 F.3d at 1246-1247*. "Were we to conclude that the conduct established by Mendoza was sufficiently severe or pervasive to alter her terms or conditions of employment, we would establish a baseline of actionable conduct that is far below that established by other circuits." *Id. at 1251*. Counsel for the Board will not list and discuss those cases in this brief, but provides this information for the benefit of this Court in reaching its decision.

In *Gupta* the Eleventh Circuit found that the evidence presented by the Plaintiff was not sufficient for a reasonable person to perceive the work environment to be hostile and abusive. "Furthermore, a finding that Gupta's complaints constitute sexual harassment would lower the bar of Title VII to punish mere bothersome and uncomfortable conduct, and would trivialize true instances of sexual harassment." *Gupta, 212 F. 3d at 586*, (internal quotations omitted); *Mendoza, 195 F.3d at 1252*.

In *Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F. 3d 1287 (11th Cir. (2007)*, the District Court had held that the alleged incidents of harassment were not sufficiently severe or pervasive to constitute sexual harassment. The Eleventh Circuit allowed holding to stand and decided the case on the affirmative defenses outlined in *Faragher* and *Ellerth*.

This Court must decide, looking at the totality of the circumstances, from an objective perspective whether the harassing conduct alleged by Jeffers and Craig was sufficiently severe or pervasive to alter the terms or conditions of their employment and create a hostile or abusive working environment. The Board respectfully submits that all of the evidence submitted by Jeffers and Craig, when considered in a light most favorable to them, does not prove that the alleged conduct was so severe and pervasive. Because the Plaintiffs have failed to present a prima facie case, the Board is entitled to summary judgment on their claims of a hostile work environment.

### (1)
### Claims of Jeffers

Jeffers main complaint of sexual harassment by Nacrelli is based upon Nacrelli's actions at a private party which occurred at his home in July, 2005."This was not a school function." (Nacrelli Depo. p.43:8)  In her Complaint Jeffers alleges that Nacrelli made lewd, unwanted

10

sexual statements and subjected her to improper physical conduct and exposed his male genitalia to her.  (Doc. # 1, Count One).

    Jeffers attended this party voluntarily. She drove herself to the party and she drove herself home. Everyone had left the party except for Jeffers and Nacrelli's wife Jeri. Jeffers voluntarily stayed after everyone left. Jeffers was free to leave the party at any time before or after all the other guests had left. (Jeffers Depo. p.76:2-17). Nacrelli was at his own home. Nacrelli was drunk at the time of this occurrence. (Nacrelli Depo. p.55:22-23.) Jeffers saw the alleged nakedness only because she had voluntarily chosen to remain at the Nacrelli home. The allegations that she makes about Nacrelli appearing naked are not in any way related to her employment. Nacrelli's conduct was merely offensive and does not rise to the level of sexual harassment. A reasonable person would not have found such conduct to be hostile and abusinve. *Mendoza, 195 F. 3d at 1246; Gupta, 212 F. 3d at 584.*

    The plaintiff's conduct at work is an issue that the trier of fact can examine to determine whether or not the alleged sexual advances were unwelcome.  Courts have generally held that the plaintiff's conduct outside the workplace is not relative to a determination of welcomeness.  A plaintiff's private life, regardless of how reprehensible the trier of fact might find it to be, did not provide lawful acquiesce to unwanted sexual advances at her work place by her employer.  *Burns v. McGregor Electronic Industries, Inc.* 989 F.2d 959 (8th Cir. 1983).

    Because plaintiff's conduct outside the workplace is not relevant, likewise, any conduct of Nacrelli which occurred at his own home at a private party hosted by him and his wife and outside the workplace is irrelevant.

    Jeffers also alleges that Nacrelli picked her up and bit her on the breast.  *Meriwether v. Caraustar Packing Co., 326 F. 3d 1990 (8th Cir. 2003)* (holding that the lone incident where a coworker grabbed the plaintiff's buttocks did not rise to the level of severe or pervasive conduct to alter the conditions of the plaintiff's employment and create an abusive work environment). *Shepard v. Comptroller of Public Accounts of Texas, 168 F3d 871 (5th Cir. 1999)*  (incidents over a two year period that included comments about the plaintiff's nipples and thighs and repeated touching of plaintiff's arm in attempts to look down plaintiff's dress were insufficient to support a hostile work environment claim).

**(2)**

**Claims of Craig**

Craig alleges that her supervisor, Nacrelli, subjected her to lewd statements of a sexual nature, improper propositions and requests for sexual favors, and unwanted physical touching. She further describes specific incidences in Paragraph 62 of her Complaint and in her Statement of Facts. (Doc. # 1, Count Three).

Nacrelli was not Craig's supervisor. Therefore any claims of Craig regarding a hostile work environment are governed by the law relating to sexual harassment by co-workers. When the alleged harassment was done by a co-worker instead of a supervisor, the employer will be held liable only if the employer "knew or should have known of the harassing conduct but failed to take prompt remedial action." *Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F. 3d 1287, 1302 (11th Cir. 2007); Kilgore v. Thompson & Brock Management, Inc. 93 F. 3d 752, 753 (11th Cir. 1996).* Thus, Craig must show that the Board either had actual knowledge or that Nacrelli's conduct was sufficiently sever and pervasive that it constituted constructive knowledge. *Miller, 277 F. 3d at 1278.*

The factors to be considered in determining whether the employer had constructive notice are "(1) the remoteness of the location of the harassment as compared to the location of management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed on a part time or full time bases; and (4) whether there were only a few, discrete instances of harassment." *Allen v. Tyson Foods, Inc., 121 F. 3d 642, 647 (11th Cir. 1997); Miller, 277 F. 3d 1278-1279.* When the severity of the allegations in *Miller* are compared to the allegations of Craig, there is not sufficient evidence to charge the Board with constructive notice. Rudd's office is at the Seale, Alabama facilities off of U. S. Highway 431 and located in the center of Russell County. Ladonia is on U.S. Highway 80 in the north western portion of Russell County. Craig drives her routes in the morning and afternoon and is at Ladonia only while delivering students for school in the morning and picking up those students in the afternoon to deliver them home. Finally, her allegations consist of only a few, discrete instances.

Craig did not tell Lee of her allegations against Nacrelli until October 25, 2005. (Lee Affidavit). Craig did not tell her supervisor Rudd of her allegations against Nacrelli until February 9, 2006. (Rudd Affidavit).

12

Craig alleges that she told Baker "the second to the last week in August" about her belief that she had been sexually harassed by Nacrelli. (Craig Depo. pp. 143:16; 144:8-23). "It was in -- closer towards September." (Craig Depo. p.146:1-3). Baker denies that this meeting ever occurred. (Baker Depo. pp. 88:14-23 – 89:1-12). However, the mere existence of a factual dispute will not automatically necessitate denial of a motion for summary judgment. Only factual disputes that are material will preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services, 358 F. 3d 804 (11th Cir. 2004); Stephens v. City of Butler, 509 F. Supp 2d 1098(S.D.Ala. 2007).* The discrepancy over whether Craig told Baker of her allegations against Nacrelli is not a material fact. The removal of Nacrelli was done in a timely manner. To defeat Board's request for summary judgment Craig "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574, 586 (1986).*

From the time that Craig testified that she met with Baker in the latter part of August 2005, or "closer to September," Craig did not encounter any further episodes of alleged sexual harassment by Nacrelli. The last incident alleged by Craig took place on August 9 or 10, 2005. (Craig Depo. pp. 140:9-10; 141:17; 142:4). Nacrelli was removed from the school on September 23, 2005. Therefore, the timing of the meeting with Baker does not raise a material fact. From the date of the alleged meeting with Baker and the time that Nacrelli was removed from Ladonia. Craig did not experience any sexually harassment by Nacrelli.

Craig has testified that she didn't report the allegations against Nacrelli earlier because she would lose her job. (Craig Depo. p. 90:18-19). Craig had the duty to report her allegations promptly. "While we have recognized that filing a sexual harassment complaint may be "uncomfortable, scary or both. . . . The *Faragher* and *Ellerth* decisions present employees who are victims of harassment with a hard choice: assist in the prevention of harassment by promptly reporting it to the employer, or lose the opportunity to successfully prosecute a Title VII claim based on the harassment. . . ." *Baldwin, 480 F.3d at 1307.* "One of the primary obligations that the employee has. . . is to take full advantage of the employer's preventative measures." *Nurse "Be" v. Columbia Palms West Hosp. Ltd, 490 F. 3d 1302, 1310 (11th Cir. 2007).*

Craig has not demonstrated a basis for holding the Board liable for the allegations against Nacrelli. *Mendoza, 195 F.3d at 1245.*Therfore she has failed to prove one of the elements of her sexual harassment claim.

Assume *arguendo* that Nacrelli was Craig's supervisor. If so, then Craig's allegations are to be considered in light of the affirmative defenses set forth in *Faragher* and *Ellerth*. The Board had a sexual harassment policy that Craig was aware of.  Nacrelli was removed from Ladonia on September 23, 2005. Craig did not meet with Lee and present her allegations regarding Nacrelli's behavior until October 25, 2005. (Craig Depo. p. 153:10-11). Craig testified that she first began trying to schedule an appointment with Lee the first part of October. (Craig Depo. pp. 147:23 - 148:1-23). By this time Nacrelli had already been removed from his position at Ladonia and was no longer on the campus. The Board had already acted promptly to correct and prevent any sexually harassing conduct by Nacrelli.

The allegations made by both Jeffers and Craig do not rise to the level of severe and pervasive. There is simply no comparison of the allegations of Jeffers and Craig with the allegations in *Miller v. Kenworth of Dothan, 277 F. 3d 1269 (11th Cir. 2002)* in terms of their severity; frequency; any interference with their job performance or physically threatening or humiliating.  The comments and actions attributed to Nacrelli rise only to the level of offensive utterances or off handed comments in the course of casual conversation. *Id.*

## C.
## **AFFIRMATIVE DEFENSES**

The Board is entitled to summary judgment on the basis of the affirmative defenses recognized by the Supreme Court in *Ellerth* and *Faragher*. To be entitled to these defenses the Board must prove that a) it exercised reasonable care to prevent and correct promptly a sexual harassing behavior, and b) that the plaintiffs' employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth, 524 U.S. at 765; Faragher*, *524 U.S. at 807-808*. This the Board has done.

**(a)**

The Board has a sexual harassment policy that has been in place at all relevant times herein.  Board Policy GAJDBH clearly defines sexual harassment; sets forth the procedure to be used in reporting complaints; and sets for the investigative procedure to be used. (Lee Depo. Exhibit 1). This policy complies with the requirements of *Walton v. Johnson & Johnson Services, Inc., 347 F. 3d 1272 (11th Cir. 2003)* and *Nurse "Be" v. Columbia Palms West Hosp.*

14

*Ltd, 490 F. 3d 1302 (11th Cir. 2007).* While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case with litigating the first element of the defense. *Faragher, 524 U.S. at 807-08.*

Next the Board exercised reasonable care to prevent and correct promptly the alleged sexually harassing behavior of Nacrelli. Jeffers reported her allegations to Lee on September 20, 2005. Nacrelli was placed on administrative leave and removed from the campus on September 23, 2005. Craig did not report her allegations to Lee until October 25, 2005, a month after Nacrelli had been removed from the campus.

**(b)**

Both Jeffers and Craig failed to take advantage of the preventive or correctives opportunities provided by the Board. As discussed herein, both Jeffers and Craig waited unreasonably long times before they reported their allegations again Nacrelli. "And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher, 524 U.S. at 807-08.*

Jeffers may well contend that her calls to Brenda Coley, the former assistant principal at Ladonia, on the night of the party and to Dillie Elliot, a member of the Russell County Board of Education, several days later were notice to the employer and hence defeat the affirmative defense available to the Board. Both Coley and Elliot have testified that Jeffers was a personal friend of each of them and that the calls to them relating the facts which occurred at the party were made to a friend and not to either a principal or Board member. Both have testified that Jeffers specifically asked each of them not to tell. (Coley Depo. pp. 58:19-23 – 59:1-12). (Elliot Depo. pp. 29:23 – 30:1-7; 31:10-15). Jeffers admits that she asked Elliott not to tell. (Jeffers Depo. p. 107:3-8). Jeffers denies asking Coley not to tell. (Jeffers Depo. p. 92:1-3). However, Coley testified that Jeffers asked her not to tell. (Coley Depo. pp. 47:20-23 – 48:1-7).

This is the almost identical situation found in *Nurse "Be" v. Columbia Palms West Hosp. Ltd.* There the plaintiff did not want her allegations reported to the administration and would not

15

identify herself until her supervisor promised that the matter would not be reported. "We have held, albeit in an unpublished opinion, that "if [plaintiff] did not want [the harassing behavior] reported or acted upon, then [the employer] would not have been placed on proper notice of the harassment. . . One of the primary obligations that the employee has under [the rules promulgated by *Faragher* and *Ellerth* ] is to take *full advantage* of the employer's preventative measures." *Baldwin, 480 F.3d at 1307. . . . ." Id. At 1304.*

The Board had a sexual harassment policy and the Board acted promptly once the allegations were reported. Jeffers and Craig unreasonably failed to utilize the complaint procedure provided by the Board. There is no issue of material fact and the Board is entitled to summary judgment on the basis of these affirmative defenses. *Walton v. Johnson & Johnson Services, Inc., 347 F. 3d 1272 (11th Cir. 2003).*

## II
## VICARIOUS LIABILITY FOR ASSAULT AND BATTERY

Plaintiffs claim that the Board is vicariously liable for the allegations of assault and battery by Nacrelli in Count Five and Six of their Complaint.

The Board has sovereign immunity under *Art. I, §14 of the Alabama Constitution (1901)* which states "[t]he State of Alabama shall never be made a defendant in any court of law or equity." County boards of education are local agencies of the state and are entitled to sovereign immunity. *Sims v. Etowah County Board of Education, 337 So. 2d 1310 (Ala. 1976); Hutt v. Etowah County Board of Education, 454 So. 2d 973(Ala. 1984;) Louviere v. Mobile County Board of Education, 670 So. 2d 873 (Ala.1995); Stanley v. Bullock County BOE, 2007 U.S. Dist. LEXIS 84778 (M.D. Ala.2007).*

Because of sovereign immunity the Board is not vicariously liable for the alleged assault and battery by Nacrelli.

## III
## VICARIOUS LIABILITY FOR PUNITIVE DAMAGES

The Board is not liable for punitive damages. ". . . [a]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Kolstad v. American Dental Association, 527 U.S. 526, 545 (1999).* (Internal quotation marks omitted).  Giving this protection to employers accomplishes Title VII's objective of motivating employers to detect and deter violations of Title VII. *Id. at 545.* The Board has made a good faith effort to comply with Title VII. It has a sexual harassment policy that is found not only in the Board Policy Manual, but also in the handbook distributed to all employees, teachers and support personnel, and in the Transportation Manual. This policy is discussed at in-service meetings by supervisors and principals. Upon being informed of the allegations by Jeffers and Craig, the Superintendent and her staff promptly investigated the Plaintiffs' allegations and took swift action to remove Nacrelli from Ladonia. The Board is entitled to summary judgment as to the Plaintiffs' claims for punitive damages.

## IV
## STATUTE OF LIMITATIONS

Under *Ledbetter v. The Goodyear Tire and Rubber Co. Inc., 127 S. Ct. 2162 (2007)* the allegations of Jeffers and Craig regarding Nacrelli's conduct  which did not arise within 180 days of the filing of their EEOC complaints are not timely. The time for filing a charge of discrimination with the EEOC begins when the discrete act of discrimination occurs. *Id. at 2065.* Therefore, the Board is entitled to summary judgment on the allegations of Jeffers that occurred more than 180 days prior to December 23, 2005 and on the allegations of Jeffers that occurred more than 180 prior to January 19, 2006.

## CONCLUSION

Litigation alleging sexual harassment is fact intensive. The Eleventh Circuit Court of Appeals has agreed with the Fifth Circuit Court of Appeals that summary judgment is appropriate to "police the baseline for hostile environment claims." *Mendoza, 195 F. 3d at 1244.*

The factual allegation presented by Jeffers and Craig do not rise to the level of a hostile work environment. The Board is entitled to the affirmative defenses as set forth in *Ellerth* and *Faragher*. Summary judgment in favor of the Board against all of the claims of Jeffers and Craig is appropriate.

This the 14th day of December, 2007.

SMITH & SMITH
A PROFESSIONAL CORPORATION

BY: /s/ Sydney S. Smith
    Sydney S. Smith
    Attorney for Defendant
    Russell County Board of Education
    1503 Broad Street
    Phenix City, Alabama 36867
    (334) 298-2679
    ASB-4248-582S

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed today, December 14, 2007, by CM/ECF, the above and foregoing with copies being served upon:
W. Don Eddins, Esq.
doneddins@charter.net
    and
Matthew C. Williams, Esq.
matt@esw-law.com

                                                        /s/ Sydney S. Smith

CV/.C-06-045 Brief in Support of Mtn for Summary Judgment