IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BARBARA M. JEFFERS and <br> JOAN M. CRAIG, <br><br> Plaintiffs, <br><br> v. <br><br><br> RUSSELL COUNTY BOARD OF <br> EDUCATION and CHARLES NACRELLI, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. <br>    3:06 CV 685 <br> ) <br> ) <br> ) <br> ) <br> ) |

## **REPLY BRIEF OF THE RUSSELL COUNTY BOARD OF EDUCATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Russell County Board of Education, (hereinafter referred to as Board), and submits the following Reply Brief in Support of its Motion for Summary Judgment respectfully requesting that the Court enter judgment in this Defendant's favor as to all claims stated by Plaintiffs. These responses follow the format and designations of the Board's original brief. Sections to which there is no Reply have been omitted.

### **NARRATIVE SUMMARY OF UNDISPUTED FACTS**

The Plaintiffs have not objected to any of the Undisputed Facts listed by the Board. Therefore, it is assumed that those Undisputed Facts are accepted as true.

# A.

## TANGIBLE EMPLOYMENT ACTION

### (1)

### Claim of Jeffers

Board will discuss in the subsequent sections on Hostile Work Environment Sexual Harassment its belief that Jeffers has failed to make out a prima facie case to prove sexual harassment under Title VII. The five elements that must be proved are the same whether the liability is based on a hostile work environment or a tangible employment action. *Hulsey v. Pride Restaurants, LLC, 367 F. 3d 1238 (11th Cir. 2004); Pipkins v. City of Temple Terrance, Florida, 267 F. 3d 1197 (11th Cir. 2001); Johnson v. Booker T. Washington Broad. Serv., 234 F. 3d 501 (11th Cir. 2000)*

<u>VICARIOUS LIABILITY OF BOARD FOR TANGIBLE EMPLOYMENT ACTION</u>

Plaintiff, Barbara M. Jeffers (hereinafter referred to as Jeffers) has not proved a basis upon which to hold the Board liable for tangible employment action. Jeffers has failed to prove a prima facie case.

### (2)

### Claim of Craig

Board will discuss in the subsequent sections on Hostile Work Environment Sexual Harassment its belief that Craig has failed to make out a prima facie case to prove sexual harassment under Title VII. The five elements that must be proved are the same whether the liability is based on a hostile work environment or a tangible employment action. *Hulsey v. Pride Restaurants, LLC, 367 F. 3d 1238 (11th Cir. 2004); Pipkins v. City of Temple Terrance, Florida, 267 F. 3d 1197 (11th Cir. 2001); Johnson v. Booker T. Washington Broad. Serv., 234 F. 3d 501 (11th Cir. 2000)*

**(a)**
Craig's Constructive Discharge Claim

  In her Brief Plaintiff, Joan M. Craig, (hereinafter referred to as Craig) cites *Pipkins v. City of Temple Terrance, Florida, 267 F. 3d 1197 (11th Cir. 2001)* for the rule that to constitute a constructive discharge the working conditions must be so difficult that a reasonable person would be compelled to resign. This case can be distinguished from Craig's claims in several ways. First this case involved a resignation. Craig continues in her employment. Second, the Court found that the allegation made by the Plaintiff "does not rise to the level of such intolerable conditions that no reasonable person would remain on the job." *Pipkins, 267 F. 3d at 1201*. The most important distinction is that Ms. Pipkins reported her concerns almost immediately to the City's Human Relations Specialist. Within a month of that conversation, the City Manager conducted an investigation into the matter and notified the alleged harasser to seek other employment. Craig did not report her concerns until October 25, 2005. By that time, Charles Nacrelli (hereinafter referred to as Nacrelli) had been removed as the school principal for a month.

  Craig states in her Affidavit that she gave up the field trips in the 2002-2003 school year. Doc. #49-5, Exhibit K, paragraph 15. She does not give a specific month or time during the school year that she made this decision. A school year normally runs from a date in the month of August through a date in the month of May. Craig states that the first alleged incident on the trip to Hancock Street occurred "[i]n about 2002. . . ." Doc. #49-5, Exhibit K, paragraph 3. It is possible and also probable that she gave up her field trips prior to the first alleged incident occurring. It is certain that she gave up the field trips before her other allegations of sexual harassment which she claims to have occurred "over the next few years" and in 2004 and 2005.

  In her Brief Craig states that Nacrelli's harassment began not long after he became principal in November 1999. Doc. #49, p.5, second paragraph. This is in direct conflict with her Affidavit where she states that the harassment began in 2002. ." Doc. #49-5, Exhibit K, paragraph 3.

  In his Affidavit Transportation Supervisor, John Rudd (hereinafter referred to as Rudd) states that Craig did not tell him that she stopped taking field trips because of

Nacrelli until January, 2006. Rudd was aware of health issues in Craig's family and assumed that Craig stopped so that she could help with those family health issues and because she had other jobs in addition to driving a school bus. Doc. #41, Exhibit B.

## VICARIOUS LIABILITY OF BOARD FOR TANGIBLE EMPLOYMENT ACTION

Craig has not proved a basis upon which to hold the Board liable for tangible employment action. Craig has failed to prove a prima facie case.

## B.
## HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT
### (1)
### Claims of Jeffers

#### JEFFERS' ALLEGED REQUEST FOR TRANSFER

Jeffers alleges that she asked Board Member Dewilda, "Dillie,"Elliott for a transfer which was never granted. Jeffers Depo. pp. 106:23 - 107:1-2, 10. Jeffers was well aware of the method to ask for a transfer as she had asked for a transfer at least 6 times in the past. Jeffers Depo. Exhibits 2, 3, 4, 5, 6 and 7; Doc. #43-4, Exhibit A. She knew that asking a Board Member for a transfer was not the proper procedure. Jeffers never requested a transfer from either the superintendent or assistant superintendent. Jeffers Depo. p. 108:7-10; Doc. #43-4, Exhibit A.

#### JEFFERS' ALLEGED REPORTING OF INCIDENTS TO COLEY

In her Brief Jeffers makes at least 4 references to the fact that she complained to Brenda Coley (hereinafter referred to as Coley), while Coley was Assistant Principal, about the actions of Nacrelli. Doc. #49, p. 2 second paragraph; p. 11, third paragraph; p. 14, fourth paragraph; and particularly on p. 17, first paragraph: "Jeffers reported the unwelcome sexual comments to supervisor Coley on numerous occasions in the spring of 2005." This statement in her Brief is in **direct conflict** with Jeffers' testimony in her deposition "I did not report as a report to her. . . ."  (Emphasis added). Jeffers Depo. p. 56:22-23; Doc. #43-4, Exhibit A.

4

Further, Jeffers has acknowledged that she did not report any of Nacrelli's alleged statements made or actions done prior to the July 2005 party to any employee in a supervisory capacity. Jeffers Depo. pp. 40:23 – 41:1-4; Doc. #43-4, Exhibit A.

Coley's last day as Assistant Principal at Ladonia Elementary School was June 5, 2005, prior to the party in July 2005. Jeffers Depo. p. 89: 9-15; Doc. #43-4, Exhibit A. After that she was the Principal of Oliver Elementary School and no longer in a supervisory capacity at Ladonia Elementary.

## JEFFERS' ATTEMPT TO SHOW THAT ALLEGED THE SEXUAL HARASSMENT WAS PERVASIVE AND SEVERE

In an apparent effort to support her allegations that the sexual harassment from Nacrelli was pervasive and severe, Jeffers has used terms of great exaggeration in her Brief in both her Statement of Facts and her section on Hostile Environment. Jeffers uses such terms as "[f]or years, "[a]fter months," "constant barrage," "at least 25 times," and "numerous occasions". Doc. #49, pp. 2, 10 and 17. Jeffers' evidence does not support the use of these terms of exaggeration. When asked at her deposition to list the alleged incidents of sexual harassment in chronological order, Jeffers testified that she could not give a specific date. Jeffers Depo. p. 30:2-5; Doc. #43-4, Exhibit A. She describes them only in general terms without references to whom the alleged comments were made or to whom the alleged actions of Nacrelli were addressed. She states that these alleged incidents occurred in "[h]is office and hallways, my office, in from me, in front of me and others." Jeffers Depo. p. 34:19-20; Doc. #43-4, Exhibit A.

On pages 10-11 of her Brief, Jeffers is able to recall with more specificity those incidents alleged to have occurred in the spring of 2005. Eight (8) incidents are listed. Two of those eight are about Mrs. Alison Gentry. One is directed to Coley. And one is about Mrs. Jamie Evans. This is her general description of alleged sexual harassment from the time Nacrelli became principal in the fall of 1999 until the party of July 2005. Jeffers Depo. p. 38:10-13; Doc. #43-4, Exhibit A.

Jeffers has acknowledged that she never told Nacrelli that any of the alleged incidents prior to the July 2005 party offended her. She has also admitted that she did not

ask Nacrelli to stop making those alleged statements in front of her. Jeffers Depo. p. 40:12-22; Doc. #43-4, Exhibit A.

In her brief Jeffers also states that "an estimated 25 or more instances from the spring of 2005 through Nacrelli's suspension on September 23, 2005. . . ." The truth is that in addition to the above described eight (8) allegations, she describes only five (5) additional incidents in her deposition and in her Brief that are alleged to have occurred after the July 2005 party. She has described a total of 13 incidents.

She begins with August 10, 2005 and describes Nacrelli picking up and carrying a child in the hall and making the statement to the child about the weight of his wife's breast. Jeffers testified that these comments were addressed to the child. Jeffers Depo. pp. 133:1-21; 134:3-7; Doc. # 49, p.13; Doc. #43-4, Exhibit A.

The next incident is alleged to have occurred on September 6, 2005. It involved the statement about a kickstand being too short. Nacrelli is alleged to have said, "I don't like it when you talk to me about it being too short." Anyone hearing this statement could have assumed he was in fact talking about the kickstand. Jeffers Depo. pp. 134:14-15; 135:10-40-12; Doc. #43-4, Exhibit A.

The third alleged incident is said to have occurred on September 9, 2005. This is the allegation that Nacrelli picked her up and bit her on the breast. Jeffers Depo. pp. 135:20; 136:18-20 and 137:1-2; Doc. #43-4, Exhibit A. Nacrelli admits that this occurred although his version is somewhat different. Nacrelli Depo. pp. 76:4-23; 77:1-5; Doc. 49-2, Exhibit B.

The fourth incident is alleged to have occurred on September 19, 2005 and involved the picture taken from a child entitled "Chicks with Dicks." Jeffers admits that she was shown the picture by Mrs. Grant, the Assistant Principal, not Nacrelli. Jeffers Depo. p. 143:17-19; Doc. #49, p.13; Doc. #43-4, Exhibit A. The comments Nacrelli is alleged to have made about the picture were made to other teachers, not in the presence of Jeffers. Jeffers Depo. p. 144:1-8; Doc. #49, p.13; Doc. #43-4, Exhibit A.

The fifth and final alleged incident is said to have occurred on September 21, 2005, when the school secretary, Rose Fowles, said that she hated her trash can because it was "humongous." Nacrelli is alleged to have said that he hears that all the time about

himself. This statement was made in response to a statement by Fowles. Jeffers Depo. pp.141:23; 142:2-16; Doc. #49, p. 3; Doc. #43-4, Exhibit A.

At least 7 of those 13 incidents either were not directed to Jeffers at all or she was only a bystander. The alleged actions of Nacrelli do not rise to the level of severe and pervasive. Jeffers cannot meet her burden of proof of establishing a prima facie case against the Board.

Jeffers cites the case of *Hulsey v. Pride Restaurants, LLC*, 367 F. 3d 1238 (11th Cir. 2004) as supportive of her position that Nacrelli's conduct was severe and pervasive. *Hulsey* can be distinguished in that Ms. Hulsey was the victim of at least 18 instances during approximately a 2 to 2 ½ week period before she was ultimately terminated.

Jeffers claims in her Brief to have been exposed to more than **twice as many instances over a longer period of time.** (Emphasis added.) Doc. #49, p. 16. Again this is a gross exaggeration by Jeffers. As emphasized above Jeffers recites only 13 alleged incidences, and of those 7 were either not directed to Jeffers or she was merely a bystander.

*Bussell v. Motorola, Inc.*, 141 Fed. Appx. 819; 2005 U.S. App. LEXIS 14194 (11th Cir. 2005) takes the position that events occurring over a longer period of time would be less likely to be found by the Court to be sufficient to prove severe and pervasive. In *Hulsey* the Court had found that 18 instances over 2 to 21/2 weeks were sufficient to defeat summary judgment for the employer. In *Bussell*, the alleged incidents had occurred over a longer period of time and the Court found that summary judgment for the employer's was proper.

ALLEGED INCIDENTS OCCURING AWAY FROM THE WORKPLACE

Jeffers cites *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F. 3d 1287 (11th Cir. 2007) as being a case in which "much of the alleged abuse took place off-premise at social gatherings." Doc. #49, p. 21, fourth paragraph. A careful reading of the fact in *Baldwin* indicates that there was only one incident of alleged sexual harassment that occurred away from the workplace. That incident occurred when Baldwin and the alleged harasser went to Birmingham on business for a company banquet. The alleged harasser asked Baldwin to spend the night with him and when she refused he is alleged to

have come to the door of her home, although the Court is not sure that occurred. *Baldwin, 480 F. 3d at 1294*. The only incident away from the workplace occurred on a business trip. All other incidents of alleged sexual harassment occurred at the workplace.

In her Brief Jeffers cites *Griffin v. City of Opa-Locka, 261 F. 3d 1295 (11th Cir. 2001)* as applicable to sexual harassment away from the workplace. The issues involved in *Griffin* were whether or not the rapist was acting under "color of state law" so as to hold the City liable for his actions; whether or not the harassment was a "custom or policy" of the City and whether or not the City was "deliberately indifferent" in the hiring of the rapist. The one off-premise incident occurred after attendance by Griffin at a Rotary Club function. The Court found that the Rotary Club meeting was attended by the Mayor, City Commissioners and City Department heads and that City employees were expected to attend the meetings. "In short, participation in the Rotary Club was a command performance for City employees." *Griffin, 261 F. 3d at 1304*. Again it was a business function that occurred away from the workplace.

The facts in *Crowley v. L.L. Bean, Inc., 303 F. 3d 387 (1st Cir. 2002)* cited in Jeffers' Brief are distinguishable from the facts presented here. In *Crowley* the harasser is alleged to have massaged Crowley's feet at a company pool party. It was in fact a party sponsored by L. L. Bean, Inc. Again the off-premise incident was a business function. That distinguishes it from the party hosted by Nacrelli and his wife in July 2005.

The party at Nacrelli's home was a private party that was not sponsored by the Board; not paid for by the Board and not planned by the Board. The Board did not provide security or oversight of the party. The Board did not invite the guests to the party. The Board had no prior knowledge of the party and learned of it only after it took place. The party was not a business meeting as in *Baldwin;* nor was it a company pool party as in *Crowley*; nor was it a command performance for employees as in *Griffin*.

Nacrelli testified "I went home and said something to my wife and said that, you know, we've never had, you know, a function at the house where I invited people that I work with and other people, and let's go ahead and invite them. And we chose a time in July after I had got back from vacation from seeing my parents and just had a pool party, and we invited – just sent out invitations to anybody who wanted to come to the party, and then some other people who actually didn't even work at the school also showed up

8

also." Doc. #43-3, Exhibit D, pp. 38:15-23 – 39:1-4. Nacrelli and his wife prepared the invitations at home and Nacrelli paid for the invitations, envelopes and stamps for mailing. Doc. #43-3, Exhibit D, pp. 43:13-23 – 44:1-8. Nacrelli was adamant. "This was not a school function. This was mine, so it was my money." Doc. #43-3, Exhibit D, p. 44:8-9. Nacrelli provided the beer, wine and soda for the guests. Doc. #43-3, Exhibit D, p. 48:14-18. The guests were asked to bring a covered dish and Nacrelli and his wife paid for the remainder of the food. Doc. #43-3, Exhibit D, p. 53:2-6. Neither PTA funds nor any school money was used in any way for the party. No one contributed to the expenses other than Nacrelli and his wife. Doc. #43-3, Exhibit D, p. 53:12-21.

## JEFFERS' CLAIM THAT SHE WAS MADE TO WORK WITH NACRELLI AFTER SHE REPORTED HER ALLEGATIONS TO DR. LEE

In her Brief Jeffers attempts to give the impression that she was made to work with Nacrelli for a great length of time after she reported her allegations to Dr. Rebecca S. Lee (hereinafter referred to as Lee), the Superintendent. Doc. #49, pp. 14 beginning with paragraph 5 and continuing through first full paragraph of page 15. In fact she only worked at the school for 3 days while Nacrelli was there. She reported her allegations to Lee on Tuesday afternoon, September 20, 2005 then went home. Nacrelli's last day at the school was Friday, September 23, 2005, only a 3 day period. Jeffers Depo. pp. 164:8-16; 165:6-11; Doc. #43-4, Exhibit A.

## VICARIOUS LIABILITY OF BOARD FOR HOSTILE WORK ENVIRONMENT

Jeffers has not proved a basis upon which to hold the Board liable for hostile work environment sexual harassment. Jeffers has failed to prove a prima facie case.

**(2)**

**Claims of Craig**

<u>CRAIGS' ATTEMPT TO SHOW THAT ALLEGED SEXUAL HARASSMENT WAS PERVASIVE AND SEVERE</u>

     Craig, in her apparent effort to support her allegations that the sexual harassment from Nacrelli was pervasive and severe, has also used terms of great exaggeration in her Brief in both her Statement of Facts and her section on Hostile Environment. Craig uses the term "[o]n many occasions" and "an estimated two dozen or more times." Doc. # 49, pp. 5 and 26. In her Affidavit Craig uses the terms "occurred frequently" and "probably two dozen times or more." Doc. #49-5, Exhibit K, paragraph 6. As with Jeffers, Craig's evidence does not support the use of these terms of exaggeration. Craig describes only 7 incidents of alleged sexual harassment in her Affidavit.

     The first occurred in 2002 and Nacrelli is alleged to have made improper statements about her legs and rubbed her legs and her hair. The next alleged incident occurred when Nacrelli is alleged to have rubbed her neck and her legs and commented about her breasts. The third allegation is that Nacrelli made gestures such as grabbing his pants and squeezing his privates. He also is alleged to have talked about how good Italian men were at sex. The fourth allegation occurred in March 2004 when Nacrelli put his arm around her. When she shrugged him off, his arm slid down and he squeezed her butt. He also made comments about her breasts. The fifth allegation is that Nacrelli put his arm around Craig at a Christmas party. The sixth allegation is that at an in-service meeting in August 2005, Nacrelli stood so close by her chair and his crotch was inches from her face. The seventh and final allegation is that at an August 8, 2005 meeting Nacrelli rubbed her shoulder. Doc. #49-5, Exhibit K, paragraphs 3, 4, 5, 7, 8, 9 and 10.

     Nacrelli's actions were subjectively offensive to Craig. If all of Craig's allegations are true, some of Nacrelli's actions might be considered objectively offensive by a reasonable person. However Nacrelli's alleged actions certainly do not rise to the level of being pervasive and severe. Nacrelli's actions were not sufficient to meet Craig's burden of proof.

     It is hard to believe that Craig could not stop Nacrelli's conduct toward her. Craig made statements such as "I am going to haul off and cold cock that son of a bitch is what

I said" and "I told her that he needed to go jack-off. That's the word I said, jack-off. Because he needed to go get his rocks off." Craig Depo. pp. 108:11-13; 111:7-10; Doc. #43-5, Exhibit C. A woman who is comfortable using these terms in general conversation should be able to prevent a man from makes sexual advances to her.

Craig has failed to prove a prima facie case against the Board.

### CRAIG'S CLAIM THAT NACRELLI WAS HER SUPERVISOR

In her Affidavit, Craig attempts to show that Nacrelli was her supervisor. Doc. #49-5, Exhibit K, paragraphs 1, 21 and 22. She refers to Exhibit 1 to her Affidavit which states that the principal is responsible for disciplinary matters concerning bus conduct and that the bus driver must give the principal information on the Bus Conduct Report Form. Doc. #49-5, Exhibit K, Exhibit 1, p. 1. This responsibility of the principal does not make the principal the supervisor of the bus driver.

Craig also relies on page 2 of Exhibit 1 to her Affidavit to support her claim that Nacrelli was her supervisor based on the statement that the principal can give direction for bus use, "upon the written authorization by the School Superintendent." Doc. #49-5, Exhibit K, Exhibit 1, p. 2. This ability of the principal "upon the written authorization by the School Superintendent" does not make the principal the supervisor of the bus driver.

### VICARIOUS LIABILITY OF BOARD FOR HOSTILE WORK ENVIRONMENT

Craig has not proved a basis upon which to hold the Board liable for hostile work environment sexual harassment. Craig has failed to prove a prima facie case.

### C.
### AFFIRMATIVE DEFENSES
#### (a)
### JEFFERS' KNOWLEDGE OF THE BOARD'S SEXUAL HARASSMENT POLICY

Jeffers' testimony that she was not aware of the content of the Board's Sexual Harassment policy lacks credibility. Jeffers Depo. p. 347:5-9; Doc. #43-4, Exhibit A. On

the one hand Jeffers alleges that she reported the incidents to the appropriate personnel and on the other hand she alleges that she was not aware of any sexual harassment policy of the Board. One allegation is in direct contradiction to the other allegation. Attached to her deposition are the relevant pages from the Handbook for School Personnel, Parents & Students for the school years 2004-2005 and 2005-2006 entitled "Russell County Board of Education, Statement of Sexual Harassment Policy." Jeffers Depo. p. 350:1-4; Exhibits 14 and 15; Doc. #43-4, Exhibit A. These documents are not the Board Policy itself which is Exhibit 13 to Jeffers Deposition. Jeffers Depo., Exhibit13; Doc. #43-4, Exhibit A. Rather they are a "Statement" of the Sexual Harassment Policy. Jeffers even produced a copy of the same Handbook for School Personnel, Parents & Students for the school year 2007-2008, and she pointed out how it differed from the sexual harassment policy in the Handbook for the school years 2003-2004 and 2004-2005. Jeffers Depo. p. 348:1-6, Plaintiff's Exhibit 1; Doc. #43-4, Exhibit A.

  Jeffers is well aware of the laws and policies regarding the number of students a counselor can have in each class as she is basing her claim of tangible job action on what she alleges is an improper schedule for the school year 2005-2006. Jeffers knew the policies for the input of students' scores on the DIBELS test. Jeffers Depo. pp. 102:21-23 – 103:1-2; Doc. #43-4, Exhibit A. She also knew about the FERPA policy that protects the rights of students. Jeffers Depo. pp. 103:9-12; 104:9-10; Doc. #43-4, Exhibit A. (FERPA is misspelled in the deposition transcript as FERBER.) Logically, the assumption is that she would be equally familiar with the other policies applicable to her employment such as sexual harassment.

### CRAIG'S KNOWLEDGE OF THE BOARD'S SEXUAL HARASSMENT POLICY

  In her Affidavit Craig states that she never knew that the Board had a sexual harassment policy. Doc. #49-5, Exhibit K, paragraph 20. Craig's statement lacks credibility. In paragraph 21 of her Affidavit she states that school bus drivers "are given notebooks which include procedures we are to follow." Doc. #49-5, Exhibit K, paragraph 21. Attached as Exhibit 1 to her Affidavit are 2 pages from that "notebook" relating to principal's duties and bus usage. Doc. #49-5, Exhibit K, Exhibit 1.This is the same

"notebook" referred to by Rudd in his Affidavit. Attached to Rudd's Affidavit are 2 pages from this "notebook". The second page has a heading "Harassment" and it states that "[h]arassment would include unwarranted activities or comments based on race, **gender**. . . ." (Emphasis added)  Doc. #41, Exhibit B, p. 6. (The differences in the page numbers and types of the document attached to Craig's Affidavit and Rudd's Affidavit result from "notebooks" from different years being used.)

Craig had been given the "notebook" containing the Harassment section. By her own admission she acknowledges that the "notebook" has been "in effect for many years. . . ." Doc. #49-5, Exhibit K, paragraph 21. With her possession of the "notebook" for many years, Craig had knowledge of the harassment policy which specifically relates to gender.

## II
## VICARIOUS LIABILITY FOR ASSAULT AND BATTERY

In their Brief neither Jeffers nor Craig discussed the Board's response to their alleged vicarious liability for assault and battery.  Therefore that claim is deemed to be abandoned by Plaintiffs. Advocent Huntsville Corp. v. Clearcube Technology, Inc., 443 F. Supp. 2d 1284 (N.D. Ala. 2006); Chapman v. AI Transport, 229 F. 3d 1012 (11th Cir. 2000); Sawtell Ptnrs, LLC v. Admiral Ins. Co., 2006 U.S. Dist. LEXIS 43971 (D. Ga., 2006); McIntyre v. Eckerd Corp. 2007 U.S. App. LEXIS 24345 (11th Cir. 2007).

## III
## VICARIOUS LIABILITY FOR PUNITIVE DAMAGES

In their Brief neither Jeffers nor Craig discussed the Board's response to their alleged claim for punitive damages.  Therefore that claim is deemed to be abandoned by Plaintiffs. Advocent Huntsville Corp. v. Clearcube Technology, Inc., 443 F. Supp. 2d 1284 (N.D. Ala. 2006); Chapman v. AI Transport, 229 F. 3d 1012 (11th Cir. 2000); Sawtell Ptnrs, LLC v. Admiral Ins. Co., 2006 U.S. Dist. LEXIS 43971 (D. Ga., 2006); McIntyre v. Eckerd Corp. 2007 U.S. App. LEXIS 24345 (11th Cir. 2007).

## IV
## STATUTE OF LIMITATIONS

In their Brief neither Jeffers or Craig responded the Board's defense of the statute of limitations. Therefore any response is deemed to be abandoned by Plaintiffs. Advocent Huntsville Corp. v. Clearcube Technology, Inc., 443 F. Supp. 2d 1284 (N.D. Ala. 2006); Chapman v. AI Transport, 229 F. 3d 1012 (11th Cir. 2000); Sawtell Ptnrs, LLC v. Admiral Ins. Co., 2006 U.S. Dist. LEXIS 43971 (D. Ga., 2006); McIntyre v. Eckerd Corp. 2007 U.S. App. LEXIS 24345 (11th Cir. 2007).

## CONCLUSION

The Defendant, Russell County Board of Education, is entitled to summary judgment in its favor as to all the claims of the Plaintiffs.

This the 25th day of January, 2008.

SMITH & SMITH, P.C.

BY: /s/ Sydney S. Smith

Sydney S. Smith
Attorney for Defendant
Russell County Board of Education
1503 Broad Street
Phenix City, Alabama 36867
(334) 298-2679
ASB-4248-582S
ssmith4843@aol.com

CERTIFICATE OF SERVICE

    I hereby certify that I have filed today, January 25, 2008, by CM/ECF, the above and foregoing with copies being served upon:

    W. Don Eddins, Esq.

    doneddins@charter.net

    and

    Matthew C. Williams, Esq.

    matt@esw-law.com

                                       /s/ Sydney S. Smith